BARCLAY DAMON LLP

Brad M. Gallagher
Lauren J. Wachtler (*pro hac vice*)
Tel: (518) 429-4000
Fax: (518) 429-4001
Email: bgallagher@barclaydamon.com
         lwachtler@barclaydamon.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PRIMED PHARMACEUTICALS, LLC AND OAK DRUGS, INC.**,<br><br>            Plaintiffs,<br><br>    -against-<br><br>**NATIONAL ASSOCIATION OF BOARDS OF PHARMACY**, *et. al.*,<br><br>            Defendant. | C.A. No. 2:18-cv-17462-KM-MAH |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**
**PLAINTIFFS' EXPERT DAMAGES REPORT AND FOR SANCTIONS**

26964509.1

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................... 1

POINT ONE

PLAINTIFFS' DAMAGES THEORY HAS REMAINED CONSISTENT THROUGHOUT THIS LITIGATION AND NABP'S CLAIM TO THE CONTRARY IS FACTUALLY INCORRECT AND SHOULD BE REJECTED ................................................................... 2

    A. Plaintiffs' Initial Disclosures on Damages ........................................................... 3

    B. Plaintiffs' Supplemental Disclosures on Damages Remain Consistent ............... 4

    C. Plaintiffs' Expert Report on Damages Is Consistent with Prior Disclosures ...... 5

    D. NABP's Calculated Misunderstanding of Plaintiffs' Damages Theory and Plaintiffs' Expert Report Must be Rejected ........................................................ 6

POINT TWO

NABP'S CLAIM OF PREJUDICE IS UNSUPPORTED AND ILLUSORY AND SANCTIONS UNDER PENNYPACK ARE UNWARRANTED ............................................... 8

    A. Plaintiffs' Disclosures Were Timely ..................................................................... 9

    B. Plaintiffs' Disclosures Were Complete .............................................................. 10

    C. Plaintiffs Did Not Violate the Court's Scheduling Order ................................... 10

        *1. NABP Has Not Been Prejudiced* ................................................................. 11

        *2. NABP has Failed to Avail Itself of Ample Opportunities to Cure* ............. 11

        *3. NABP Cannot Substantiate Any Claim of Bad Faith Because None Exists* ................. 12

POINT THREE

NABP'S MOTION TO STRIKE IS NOT "SUBSTANTIALLY JUSTIFIED" AND THIS COURT SHOULD AWARD COSTS AND ATTORNEYS FEES TO PLAINTIFFS ............. 13

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
   No. 1:21-cv-00704-MAK, 2022 U.S. Dist. LEXIS 151544 (D. Del. June 2,
   2022) .................................................................................................................. 14

*Catalina Rental Apartments, Inc. v. Pac. Ins. Co.*,
   No. 06-20532-CIV-LENARD/TORRES, 2007 U.S. Dist. LEXIS 24651 (S.D.
   Fla. Apr. 3, 2007) ................................................................................................ 13

*Johnson v Murphy*,
   No. 4:10-cv-01494-RBH, 2011 U.S. Dist. LEXIS 80513 (D.S.C. July 22,
   2011) .................................................................................................................. 12

*Konstantopoulos v. Westvaco Corp.*,
   112 F.3d 710 (3d Cir. 1997) ................................................................................. 9

*In re Mercedes-Benz Antitrust Litig.*,
   225 F.R.D. 498 (D.N.J. 2005) ............................................................................ 13

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens
   Steel*, 777 F.2d 113 (3d Cir.1985), *aff'd* 482 U.S. 656 (1987) ..................... passim

*Newman v. GHS Osteopathic, Inc.*,
   60 F.3d 153 (3d Cir. 1995) ................................................................................ 13

*Nicholas v. Pennsylvania State Univ.*,
   227 F.3d 133 (3d Cir. 2000) ........................................................................... 9, 12

*Williams v. CVS Caremark Corp.*,
   No. 15-5773, 2016 U.S. Dist. LEXIS 109708 (E.D. Pa. Aug. 18, 2016) ............ 14

**Other Authorities**

Federal Rule of Civil Procedure §§ 37(a)(3)(b)(iv), (4), (b)(2)(A), and (c)(1) ............. 9

Rule 26 ........................................................................................................... 3, 4, 5, 12

Rule 26(e) ........................................................................................................................ 6

Rule 37 ................................................................................................................ passim

Rule 37(a)(5)(b) ........................................................................................................ 1, 14

26964509.1

**PRELIMINARY STATEMENT**

On May 1, 2023, consistent with the Court's Scheduling Order, Plaintiffs provided NABP with their expert report on damages with additional information related to damages. The damages calculations contained in Plaintiffs' expert report are predicated on a theory of damages consistently advanced by Plaintiffs since the preliminary hearing stage of this case. Nevertheless, NABP seeks preclusion of Plaintiffs' expert report on the basis that Plaintiffs' theory of damages has, to its alleged surprise, changed, and further erroneously claims Plaintiffs violated the Court's scheduling order related to discovery, which Order contained a single date of May 1, 2023 for the completion of expert discovery. There are no other dates relating to expert disclosure or discovery in the Order. Plaintiffs complied with that Order.

NABP's entire argument in support of its request that this Court enter an order striking Plaintiffs' expert report is predicated on what appears to be a purported and baseless argument-- that Plaintiffs are advancing a new theory of damages. As set forth below, this is incorrect. Nor has NABP substantiated any claim of prejudice. Upon receipt of Plaintiffs' expert report, NABP remained silent for almost two months. It did not ask Plaintiffs or the Court for an extension of expert discovery beyond the May 1st date contained in the Order. It did not seek to depose Plaintiffs' expert or seek any additional documents relating to that report  It did not retain its own expert to challenge or opine on Plaintiffs' expert report. Instead, nearly two months after timely receipt of Plaintiffs' expert report, NABP made a 40-page motion to strike the report. Because NABP's motion to strike is not "substantially justified," not only should its extant motion be denied, but NABP should be ordered to pay Plaintiffs' costs and attorney's fees incurred by Plaintiffs, pursuant to Rule 37(a)(5)(b).

1

## POINT ONE

## PLAINTIFFS' DAMAGES THEORY HAS REMAINED CONSISTENT THROUGHOUT THIS LITIGATION AND NABP'S CLAIM TO THE CONTRARY IS FACTUALLY INCORRECT AND SHOULD BE REJECTED

From the outset of this litigation, Plaintiffs have consistently maintained and pled that their damages included "actual and anticipated loss of relationships with current and **potential** pharmacy customers." (emphasis added). This, *per force*, includes lost sales to customers who *but for* NABP's conduct would have become customers of Plaintiffs' sooner; *i.e.,* the "loss of relationship with…**potential** pharmacy customers." Plaintiffs have also consistently maintained and pled that "the ultimate value of Plaintiffs' lost-customers damages [would] be determined at the close of discovery and based on expert proof."

Consistent with these statements, Plaintiffs provided only estimated damages until they furnished their expert report on damages, noting that these initial numbers were preliminary, that they were subject to expert calculation, and that damages were still ongoing, AND on a date consistent with the Court's Scheduling Order, Plaintiffs provided a final damages calculation which, included damages from lost sales to customers who *but for* NABP's conduct would have become customers of Plaintiffs' sooner. From the commencement of this matter, all of the damages calculations contained and summarized in Plaintiffs' expert report dated May 1, 2023 reflect, and are limited to, "actual and anticipated loss of relationships with current and potential pharmacy customers." Plaintiffs have advanced a consistent theory of damages.

And yet, notwithstanding the consistency and clarity of Plaintiffs' statements over the course of years, NABP now asserts, it was "surprised" by Plaintiffs' expert report (DE 235 at p. 1); led on a "wild goose chase, wasting resources and handicapping [its] ability to prepare a defense" (DE 235 at p. 2); and that Plaintiffs, in their expert damages report, "disclose a brand new

theory different from the one the Plaintiffs disclosed during the PI phase." (DE 235 at p. 3). NABP has also accused Plaintiffs of "misdirection" (*see, for example*, DE 235 at p. 2) and seeks the draconian sanction of preclusion. This inaccurate, and indeed false premise, does not change the underlying fact that Plaintiffs' theory of damages has not changed since the inception of this lawsuit.

### A. Plaintiffs' Initial Disclosures on Damages

Plaintiffs' amended initial Rule 26 Disclosures, filed before the preliminary injunction hearing in this case, and noted that their damages included "actual and anticipated loss of relationships with current and potential pharmacy customers". Plaintiffs further disclosed the number of customers who were then known to have ceased purchasing from them because of the VAWD requirement, or customers who had reduced their level of purchasing from Plaintiffs. Significantly, Plaintiffs correctly noted and disclosed that this list was preliminary, as damages were ongoing, did not include the projected growth in customer relationships absent the VAWD requirement, and that "the ultimate value of Plaintiffs' lost-customers damages [would] be determined at the close of discovery and based on expert proof." *See* Exhibit A. NABP's current suggestion notwithstanding, it would have been impossible for Plaintiffs to then assess the full extent of the customer relationships lost to Plaintiffs or the damages they would incur when they were not then accredited and had no idea whether or when they might become accredited. Furthermore, it would have been impossible to then calculate the extent to which the Plaintiffs' ongoing struggles in obtaining accreditation would negatively impact their prospective ability to retain current customers, reengage with lost customers, and attract and retain new customers.

With these caveats, including having disclosed that their assessments were estimations and did not yet include projected growth *but for* the VAWD requirement, Plaintiffs nevertheless

3

informed NABP of their preliminary assessment of damages, including their preliminary assessment of the number of customer relationships then known to have been impacted by NABP's violation of Plaintiffs' due process rights and failure to accredit Plaintiffs before the full implementation of the VAWD requirement on a timely basis. Given that Plaintiffs had not yet received VAWD accreditation and the quantum of potential customers who would not purchase from them until they received VAWD accreditation could was not then be known, and would not be known until they received accreditation, and the fact of their accreditation became known to others in the marketplace, Plaintiffs' disclosure was as accurate and as detailed as circumstances allowed and was, therefore, reasonable.

NABP has now somehow, transmogrified those facts into an argument that upon filing their expert report on damages, Plaintiffs changed their theory of damages, concluding, perhaps disingenuously, that the loss value and number of lost customers previously disclosed was immutable, even before Plaintiffs became accredited. *See* DE 235 at pp. 10-11.[1] That position is illogical and factually impossible and should be rejected by this Court.

### B. Plaintiffs' Supplemental Disclosures on Damages Remain Consistent

Plaintiffs thereafter supplemented their Rule 26 disclosures related to damages on April 7, 2023 and again on May 30, 2023. In each instance, Plaintiffs updated their estimated total loss value as more information became known to them, and, as NABP also knows, clearly stated in

---

[1] NABP's failure to appreciate the scope of Plaintiffs' damages is reflected in NABP's statement that "NABP **had no reason to believe** Plaintiffs' damages theory was anything other than Plaintiffs lost sale due to customers they had then permanently lost or acquired after they were accredited…" DE 235 at pp. 10-11 (emphasis added). This statement is simply wrong. NABP knows that Plaintiffs' damages included the loss of potential customers as Plaintiffs had disclosed in *February of 2019*, four years ago, stating unequivocally that damages included "actual and anticipated loss of relationships with current and potential customers" and that Plaintiffs' initial, preliminary estimated statement of damages did *not* include customers it would have retained or acquired *but for* its delayed VAWD accreditation. Exhibit A.

4

their supplemental disclosures, following expert consultation, Plaintiffs were *only* pursuing damages related to lost customers. In each of these disclosure, Plaintiffs again reiterated that their damages included *"actual and anticipated loss of relationships with current and potential pharmacy customers"* and that any expressed amount of monetary damages due to lost current and potential customers, with the exception of their May 30th disclosure, were preliminary and subject to expert analysis.

In short, Plaintiffs' damages have consistently remained as "actual and anticipated loss of relationships with current and potential pharmacy customers" – which has also consistently included anticipated loss of potential customers who would have purchased from Plaintiffs *but for* NABP's violation of Plaintiffs' rights and failure to timely accredit them. All of the damages identified and clearly set forth in all three of Plaintiffs' Rule 26 disclosures – on February 8, 2019, on April 7, 2023, and on May 30, 2023 – was made known to NABP and has remained consistent throughout the course of this litigation.

### C. Plaintiffs' Expert Report on Damages Is Consistent with Prior Disclosures

Plaintiffs' expert report on damages is also consistent with their Rule 26 disclosures. Loss numbers that were preliminary prior to May 1, 2023 when NABP received Plaintiffs' expert report were finalized and include the full scope of losses attributable to NABP's conduct. Therein, the number of actual impacted customer relationships proved substantially greater than those estimated to be impacted while Plaintiffs were still seeking accreditation. While the number of impacted customer relationships, as well as the monetary amounts attributable to them may have differed after expert analysis, Plaintiffs' theory of damages has not. As there was no change in theory, there was no Rule 37 violation and since NABP's motion is wholly predicated on an alleged change in theory, that motion must be denied.

5

26964509.1

### D. NABP's Calculated Misunderstanding of Plaintiffs' Damages Theory and Plaintiffs' Expert Report Must be Rejected

NABP also makes much of Plaintiffs' statements attendant to their discovery responses that they had no further information to disclose, and then faults Plaintiffs for disclosing additional information sought by, and provided to, their expert on damages. *See* DE 235 at pp. 6-7. NABP knows, or should know, that discovery obligations are continuing and Plaintiffs complied with those obligations by providing additional information as soon as it became available. *See* Federal Rule of Civil Discovery Rule 26(e).

Furthermore, the discovery responses to which NABP refers were dated February 13, 2023, nearly a month prior to Plaintiffs retaining an expert on damages, and at the time represented Plaintiffs' best understanding of the information they possessed relevant to damages and responsive to NABP's discovery demands. Once additional information became known and its damages calculation subject to expert analysis and calculation, Plaintiffs provided NABP with the additional information their expert deemed relevant and/or reviewed.

Plaintiffs' expert on damages was retained on March 9, 2023 and thereafter, following conversations between the expert and Plaintiffs, the expert indicated what additional information he needed and wanted to review. That information was provided to the expert and to NABP. NABP's current assertion that Plaintiffs are "withholding" information is ill-conceived. In his report Plaintiffs' expert details the information on which he relied, and notes that "[t]here are other documents and information provided over the course of the engagement that we reviewed but determined to be duplicative and did not incorporate into our analysis." Exhibit E at p. 7. NABP has erroneously interpreted that statement to mean that in preparing his opinion, Plaintiffs' expert relied upon information that had not been provided to NABP. DE 235 at p. 21. That statement however does not substantiate, at all, NABP's claim that Plaintiffs withheld information from

6

NABP.  No information was withheld.  NABP was provided with copies of everything relied upon by Plaintiffs' expert, with the exception of court pleadings, pleadings readily available to NABP, as well as information the expert reviewed but did *not* rely upon in rendering his opinion.  The materials and information provided to NABP far exceeds that which is identified in Plaintiffs' expert report as having been relied upon by the expert.   And NABP was certainly free to question the expert about his opinion, retain its own expert to review Plaintiffs' expert's report, opine on what Plaintiffs' expert did or did not review, and form his or her own opinion at the appropriate time.  NABP chose not to do so.

In short, Plaintiffs disclosed their damages theory to NABP as far back as the preliminary hearing stage of this case, years ago, and since then, have steadfastly maintained the same theory. Plaintiffs provided NABP information and additional information underlying their damages calculations, and timely supplemented those disclosures as the full extent of those damages became known.  NABP's claimed "surprise" can only be  feigned, where, as here, documentary evidence demonstrates that Plaintiffs' damages theory has consistently included the loss of potential customers and did not (and could not) include lost projected customers while Plaintiffs remained, without reason, unaccredited.

Preclusion of critical evidence is an extreme sanction, and one that is unwarranted absent willful deception or flagrant disregard of a court order  (*see*, *e.g., Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904-905 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir.1985), *aff'd* 482 U.S. 656 (1987)).  NABP's apparently calculated, and factually erroneous misunderstanding of Plaintiffs' theory of damages does not meet this standard and should be rejected.

## POINT TWO

## NABP'S CLAIM OF PREJUDICE IS UNSUPPORTED AND ILLUSORY AND SANCTIONS UNDER *PENNYPACK* ARE UNWARRANTED

Plaintiffs timely served their expert report on damages consistent with the Court's Scheduling Order. That Order was silent on the timing of the exchange of expert reports and the scheduling of expert depositions. NABP may have misconstrued the Court's Order in suggesting that Plaintiffs were under an obligation to provide NABP with an expert report on some unspecified date in advance of the May 1 Court Ordered deadline, or that Plaintiffs should have reached out to see if NABP wanted additional discovery or depositions on some other date, but its misunderstanding does not give rise to a Rule 37 violation, let alone the preclusion of an expert report. Indeed, if NABP truly believed this was the case, it would have reached out to either suggest the exchange of reports or additional discovery in advance of the May 1 date or even after it, to ensure it had all the disclosure to which it thought it is or was entitled. It is certainly not uncommon for an exchange of expert reports and then an exchange of rebuttal expert reports, or to suggest those additional dates. NABP did not do so.

As articulated in Point One above, Plaintiffs' theory on damages has remained consistent throughout this proceeding, and there is no substantive basis for finding that Plaintiffs did not comply with their discovery obligations, warranting the imposition of sanctions under Rule 37. Absent a Rule 37 violation there is no basis on which to consider the factors set forth in *Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904-905 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir.1985), *aff'd* 482 U.S. 656 (1987)) which would even come close to suggesting an imposition of sanctions, which consideration would only be applicable upon a finding that a party violated its discovery obligations.

8

A Rule 37 violation may only potentially exist if a party "*fails to produce documents,*"provides "*an evasive or incomplete disclosure*", or "*fails to obey an order to provide or permit discovery,*" and that failure to disclose or supplement is not "substantially justified or harmless." Federal Rule of Civil Procedure §§ 37(a)(3)(b)(iv), (4), (b)(2)(A), and (c)(1). In considering whether Rule 37 sanctions are warranted, Courts in the this Circuit haveconsidered various factors, including:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *see also Pennypack Woods*, *supra* at 904-05.

Other factors considered by Courts in this Circuit have included (5) "the importance of the excluded testimony" and (6) the party's explanation for failing to disclose. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (*quoting Pennypack*, *supra* at 905). Whether considered individually or collectively, there is no basis to sanction Plaintiffs.

### A. Plaintiffs' Disclosures Were Timely

Plaintiffs' expert report was provided on the last date within the window the Court designated for expert disclosure. There were no other dates relating to expert discovery in that Order. The Court's Order is silent on the timing of the exchange of expert reports and only includes "discovery relating to experts." DE 204. NABP's counsel and Plaintiffs' counsel participated in setting the date memorialized in the Court's Order for providing expert disclosure. Neither counsel objected to the single date, nor suggested any additional dates or any other provision related to expert disclosure. NABP can hardly be heard to complain that the lack of the

9

inclusion of other dates or direction regarding expert disclosure, which it condoned at the time, now somehow prejudices it. NABP had ample opportunity to either suggest additional dates or additional time-frames for inclusion in that Order. It never did so.

### B. Plaintiffs' Disclosures Were Complete

Plaintiffs' disclosures were neither incomplete nor evasive. As Exhibit C makes clear, Plaintiffs have provided NABP with reams of financial data related to their customer relationships and sales. NABP also deposed Plaintiffs, for hours, on that same financial data. Quite simply, Plaintiffs did not violate Rule 37. Plaintiffs provided information responsive to NABP's discovery demands and repeatedly supplemented that information following multiple "meets-and-confers" with NABP. Plaintiffs have neither been evasive, nor have any disclosures been incomplete in any way to come even close to coming within the ambit of Rule 37. Exhibit A at 3.

### C. Plaintiffs Did Not Violate the Court's Scheduling Order

Nor is there any substance to NABP's claim that Plaintiffs violated any Court Order. While NABP claims Plaintiffs violated the Court's Scheduling Order by failing to provide expert discovery before the close of discovery, Plaintiffs' expert disclosures were consistent with the Court's Order setting May 1, 2023 for the completion of expert discovery. Curiously, it was not until nearly two months after receipt of the expert report that NABP said a single thing or made any objection to the report. Nor did NABP provide any expert report within the time frame set forth in the Court's Order providing for disclosure of experts by *all parties* by May 1, 2023.

And, even more curious, is the fact that when NABP did finally address Plaintiffs' report, it did not ask for a deposition, did not seek additional expert discovery or retain its own expert. It made this motion; repeatedly arguing that Plaintiffs not only violated the Court's discovery order but continue to do so after the close of discovery. *See* DE 235 at p. 16. Discovery, however, is

10

ongoing. There are open discovery issues pending before the Court, in addition to NABP's motion, and NABP fails to advise the Court that NABP *itself* left open the deposition of Ben Hodgins, Plaintiff Oak's principal, which NABP has never chosen to resume. The Court even appointed a Special Master to address several open discovery issues, and any other discovery issues raised by the parties, in addition to NABP's motion.

*1. NABP Has Not Been Prejudiced*

While NABP claims it has been prejudiced by the disclosure of Plaintiffs' expert on May 1, 2023, in accordance with the Court's Order, NABP has not, because it cannot demonstrate any prejudice resulting from the May 1, 2023 disclosure of Plaintiffs' expert report. While NABP claims to have been "surprised" and thus prejudiced, that assertion is unfounded given that Plaintiffs have repeatedly and consistently stated their damages theory and repeatedly and consistently stated the scope of their damages. NABP's alleged surprise does not constitute a change in theory and the substance of Plaintiffs' expert report does not violate Rule 37. And, as noted above, upon this purported surprise, NABP did nothing—until months after receipt of Plaintiffs' Expert Report, when, instead of seeking an extension to provide its own report, or even to retain an expert or depose Plaintiffs' expert, it only made this motion.

NABP's claims of being led "on a wild-goose chase" and "wasting resources" are equally unfounded. NABP fails to articulate what it mistakenly chased and how it wasted resources. This *ipse dixit* assessment simply does not meet any standard for the imposition of sanctions.

*2. NABP has Failed to Avail Itself of Ample Opportunities to Cure*

To the extent there is any error, which Plaintiffs firmly believe there was not, there is ample time and opportunity for a cure. Discovery, notwithstanding the Court's initial scheduling order, effectively remains open and the appointment of a Special Master by the Court to facilitate the

11

conclusion of discovery attests to that fact. The Court's Order appointing a Special Master contemplates additional discovery by the parties and provides a mechanism for resolving disputes attendant to such discovery. *See* DE 237 at §§ 1(3), or 4. Certainly to the extent NABP wishes to conclude its open depositions of Ben Hodgins, wants to depose Plaintiffs' expert on damages, or file its own expert report on damages, a mechanism exists for it to do so. Had NABP genuinely wished to extend the time for it to provide its own expert report and/or conduct expert discovery, it surely could have first asked Plaintiffs for consent to do so–a courtesy which Plaintiffs would have extended–and/or sought to extend expert disclosure which could surely have been completed within 30 or to 45 days.

To date, NABP has not done any of these things. Since a trial has not yet been scheduled in this matter, the scheduling of depositions or the filing of a rebuttal to Plaintiffs' expert report on damages would not impact the orderly progress of this case. C*f. Nicholas v Pennsylvania State University*, 227 F.3d 133 (2000) (upholding the sanction of exclusion as the delayed disclosure occurred during trial). Accordingly, factors #2 and 3 as articulated in *Pennypack* – that there is no ability of the party to cure that prejudice; and that allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court-- have not been met *See Johnson v Murphy*, No. 4:10-cv-01494-RBH, 2011 U.S. Dist. LEXIS 80513 (D.S.C. July 22, 2011) (holding that, while plaintiff's expert report was untimely, exclusion of the report was unwarranted since the court's scheduling order could be amended to permit the taking of expert depositions).

### 3. *NABP Cannot Substantiate Any Claim of Bad Faith Because None Exists*

NABP's assertions of "bad faith" or "foul" notwithstanding, there is no evidence of bad faith on Plaintiffs' part. NABP's basis for its motion flows fundamentally from either its own purported failure to understand and appreciate Plaintiffs' amended initial Rule 26 disclosures

12

26964509.1

and/or its illogical conclusion that Plaintiffs' damages were fixed before Plaintiffs became accredited which, given Plaintiffs' consistent theory of damages, was a factual impossibility. Plaintiffs' efforts to address and resolve NABP's repeated, and often duplicative discovery demands, following multiple meets-and-confers, and email exchanges, hardly amounts to bad faith, misdirection or misrepresentation. It has been, at least on Plaintiffs' part, a consistent effort to resolve discovery disputes, without Court intervention which were, for the most part, ultimately resolved.

As preclusion is unwarranted absent willful deception or flagrant disregard of a court order (*see*, e.g., *Pennypack, supra*), there is no factual basis for preclusion. Thus, acting within its inherent discretion to resolve alleged Rule 37 violations (*In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498 [D.N.J. 2005]); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 [3d Cir. 1995]; *Catalina Rental Apartments, Inc. v. Pac. Ins. Co.*, No. 06-20532-CIV-LENARD/TORRES, 2007 U.S. Dist. LEXIS 24651, at *6 [S.D. Fla. Apr. 3, 2007]), this Court should, in its discretion deny NABP's Motion to Strike and its request for sanctions.

## POINT THREE

### NABP'S MOTION TO STRIKE IS NOT "SUBSTANTIALLY JUSTIFIED" AND THIS COURT SHOULD AWARD COSTS AND ATTORNEYS FEES TO PLAINTIFFS

NABP's Motion to Strike is premised on two patently erroneous facts: 1) upon filing their expert report, Plaintiffs' changed their theory of damages, and 2) Plaintiffs did not comply with this Court's scheduling Order. Both premises are incorrect. Plaintiffs' theory of damages has been steadfast throughout and consistently disclosed to NABP. In fact, it was disclosed on three separate occasions and again in Plaintiffs' expert report on damages. Similarly, Plaintiffs disclosed their expert report and provided NABP with all of the information considered by their expert in

forming his opinion which iscontained in his report, whether relied upon or not, within the date parameter set by this Court.  That NABP nevertheless claims otherwise and has, in response to Plaintiffs' expert report, moved to strike the report instead of seeking any remedy other than an unauthorized and untimely motion to which Plaintiffs must now respond, has resulted in considerable expense to Plaintiffs, both in attorney's fees and in payment to the Special Master to consider and adjudicate that motion.

NABP is well aware that both Plaintiffs are small business owners and that complex litigation can be ruinously expensive.  In all likelihood, NABP chose this path specifically to have Plaintiffs incur that expense.  Equally obvious is that NABP made this motion **on the eve of a scheduled mediation** which mediation occurred on July 10th.  Given these facts, and this Court's inherent authority to award attorney's fees in the event a movant seeks sanctions unless "the motion was substantially justified" (Federal Rules of Civil Procedure 37(a)(5)(B)), Plaintiffs urge this Court to deny NABP's Motion to Strike and to impose costs and attorney's fees. *Williams v. CVS Caremark Corp.*, No. 15-5773, 2016 U.S. Dist. LEXIS 109708 (E.D. Pa. Aug. 18, 2016) "Substantial justification" requires showing that: '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in truth in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced."" *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 1:21-cv-00704-MAK, 2022 U.S. Dist. LEXIS 151544, at *3 (D. Del. June 2, 2022) (*quoting Corona v. Barnhart*, 431 F.Supp.2d 506, 511 [E.D. Pa. 2006]).

NABP's assertions regarding a "change" in Plaintiffs' theory of damages was made without a reasonable basis in truth, and NABP knows it. Plaintiffs have consistently advanced the same theory underlying their expert report on damages.  NABP's motion was made without substantial basis, warranting denial and the imposition of costs and attorney's fees.

At the very least, Your Honor is empowered to allocate costs to each side should Your Honor deem it equitable. Here, the equities weigh heavily in favor of apportioning a greater part, if not all, of the cost of this motion made by NABP, to NABP.

The Court's Order appointing the Special Master allows the Special Master to "recommend that the Court shift all or part of the expenses of one party or the other should the Special Discovery Master conclude that any party, in taking a position on a disputed item, acted in bad faith or otherwise engaged in vexatious litigation." DE 237 at § 14, footnote 4.

NABP's motion was not made in accordance with any local or other rule, was made without first meeting or conferring with Plaintiffs, was made two months after receipt of Plaintiffs' expert report, and without even discussing an extension of time in which to conduct additional expert discovery which NABP may or may not have chosen to conduct. Under these circumstances, Plaintiffs should not be penalized by sharing in the cost of NABP's motion.

**[This Section Left Intentionally Blank]**

## CONCLUSION

For the foregoing reasons, NABP's Motion to Strike should be denied and this Court should impose costs and attorney's fees against NABP for having filed a motion without substantial justification. Additionally, to the extent NABP now seeks to file an expert damages report and conduct expert depositions related to damages, Plaintiffs request this Court to issue a scheduling order regarding the same.

**DATED:** September 14, 2023

Respectfully submitted,

**BARCLAY DAMON LLP**

By: _____
Brad M. Gallagher

80 State Street, 6th Floor
Albany, New York 12207
Telephone: (518) 429-4200
E-mail: bgallagher@barclaydamon.com

Lauren J. Wachtler (*pro hac vice*)
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 784-5804
E-mail: lwachtler@barclaydamon.com

*Attorneys for Plaintiffs PriMed Pharmaceutical, LLC and Oak Drugs, Inc.*